*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-BG-1494

IN RE TAKISHA BROWN, RESPONDENT.

A Member of the Bar of the District of Columbia
Court of Appeals
(Bar Registration No. 472664)

On Report and Recommendation of the Board on
Professional Responsibility
(BDN-128-10)

(Submitted November 25, 2014                          Decided April 2, 2015)

*Douglas M. Bregman* and *Heather L. Kafetz* were on the brief for respondent.

*Wallace E. Shipp, Jr.*, Bar Counsel, *Jennifer P. Lyman*, Senior Assistant Bar Counsel, *Elizabeth A. Herman*, Deputy Bar Counsel, and *Jelani C. Lowery*, Senior Staff Attorney, were on the brief for Bar Counsel.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

PER CURIAM:  The District of Columbia Court of Appeals Board on Professional Responsibility recommends that respondent Takisha Brown be disbarred.  We accept the Board's recommendation.

**I.**

Bar Counsel brought disciplinary charges against Ms. Brown based on her handling of a personal-injury matter. After holding an evidentiary hearing, a Hearing Committee concluded that Ms. Brown had intentionally misappropriated funds and made false statements with reckless disregard for the truth. The Hearing Committee therefore recommended that Ms. Brown be disbarred. Neither Bar Counsel nor Ms. Brown took exception to the Hearing Committee's report and recommendation. The Board adopted the Hearing Committee's factual findings, agreed with the Hearing Committee's legal conclusions, and recommended that Ms. Brown be disbarred.

The Hearing Committee found the following facts. Rue Gordon was involved in an automobile accident in 2007. At the time, Ms. Brown was dating Lenwood McGee, Jr., who was a relative of Ms. Gordon's. Mr. McGee asked whether Ms. Brown would represent Ms. Gordon. Ms. Brown agreed to represent Ms. Gordon, although Ms. Brown had never before handled a personal-injury matter.

Ms. Gordon and Ms. Brown agreed that Ms. Brown would receive one third of any settlement. Ms. Brown undertook to use settlement proceeds to pay bills from Dr. Easton Manderson and Dr. Nathaniel Randolph, who had provided medical services to Ms. Gordon.

In July 2008, Ms. Brown received a check for $8900 in settlement of Ms. Gordon's claim. Ms. Brown placed $7900 in a client trust account and kept the remainder for herself. In August 2008, Ms. Brown withdrew $5000 from the trust account and gave Ms. Gordon approximately that amount in cash. The precise amount of the disbursement is unknown because Ms. Brown did not provide Ms. Gordon with a settlement sheet or otherwise keep records of the disbursement of the settlement proceeds.

Ms. Brown expected Dr. Manderson's bill to be between $1000 and $1500 and knew that Dr. Randolph was owed $1500. Although Ms. Brown was required to keep a balance in the trust account sufficient to cover these obligations, she nevertheless withdrew funds in amounts that reduced the account balance to $927.83 on August 12th and $77.83 at the end of August.

There was originally some uncertainty about the amount due to Dr. Manderson, but in September 2008 Ms. Gordon received a final bill of $1,182.46 from Dr. Manderson. Ms. Brown did not pay the bill at that time. Between March 2009 and March 2010, both Dr. Manderson's office and Ms. Gordon attempted to contact Ms. Brown about the bill, but they generally got no response. When Ms. Brown spoke to Dr. Manderson's office about the bill in June 2009, she said that she had paid the bill and would send a cancelled check. Ms. Brown did not send a cancelled check. When she responded to the disciplinary complaint in April 2010, Ms. Brown said that Dr. Manderson's bill remained outstanding because Dr. Manderson had not sent a final bill until February 2010. Ms. Brown paid the bill out of her own funds in April 2010.

At the evidentiary hearing, Ms. Brown claimed that in July 2008 she had given Mr. McGee, who at that time was her husband, $1650 in cash to pay Dr. Manderson. According to Ms. Brown, Mr. McGee told Ms. Brown that he had done so, but later admitted that he had not. Mr. McGee did not testify at the hearing, however, because Mr. McGee and Ms. Brown had separated in 2009 and Ms. Brown was unable to serve Mr. McGee with a subpoena. Ms. Brown did present an affidavit, purportedly from Mr. McGee, supporting her version of

events.  The Hearing Committee found Ms. Brown's testimony on those points to be incredible, and declined to give weight to the proffered affidavit.

Dr. Randolph had died before Ms. Brown received the settlement funds. Ms. Brown notified Dr. Randolph's office of the settlement, but also told Ms. Gordon that if Dr. Randolph's office did not seek payment within thirty days, Ms. Gordon could keep the $1500 Dr. Randolph was owed.  In April 2009, Ms. Gordon inquired about the money.  Five months later, Ms. Brown responded that she could not disburse the money to Ms. Gordon until the doctor's office sent Ms. Brown a release stating that the office would not pursue a claim for payment.

In April 2010, in response to the disciplinary complaint, Ms. Brown said that she had been unwilling to provide Ms. Gordon with the money owed to Dr. Randolph in the absence of a release from Dr. Randolph's office.   At the evidentiary hearing, however, Ms. Brown testified that she had given Ms. Gordon $1500 in cash in August 2008, because Ms. Brown had not heard back from Dr. Randolph's office.  The Hearing Committee did not credit Ms. Brown's testimony on that point.  Ms. Brown ultimately paid the bill out of her own funds in April 2010.

Based on these factual findings, the Hearing Committee found by clear and convincing evidence that Ms. Brown had intentionally misappropriated settlement funds that she knew she was obliged to pay to Drs. Manderson and Randolph, in violation of Rules 1.15 (a) and (b) of the District of Columbia Rules of Professional Conduct. Specifically, the Hearing Committee found that Ms. Brown took money for her own use from a client trust account, causing the balance in the account to fall below the amounts due to Drs. Manderson and Randolph. *Cf. generally, e.g.*, *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001) ("[M]isappropriation occurs whenever the balance in the attorney's operating account falls below the amount due to the client.") (brackets and internal quotation marks omitted). The Hearing Committee also found that Ms. Brown failed to promptly provide the doctors with funds to which the doctors were entitled. With respect to Dr. Manderson, the Hearing Committee concluded in the alternative that, even if it had credited Ms. Brown's claim that she gave Mr. McGee $1650 in cash to pay Dr. Manderson's bill, Ms. Brown's conduct would have at a minimum constituted reckless misappropriation. On that point, the Hearing Committee noted that by her own admission Ms. Brown entrusted client funds in cash to Mr. McGee, who was not a lawyer; gave Mr. McGee no instructions about how to pay the bill at issue or what to do with the cash until the bill arrived; kept no records; and failed

to take adequate steps to verify that payment had been made, even after being informed that the bill had not been paid.

The Hearing Committee also found that Ms. Brown violated Rule 8.4 (c) of the District of Columbia Rules of Professional Conduct, by recklessly misrepresenting to Ms. Gordon and to Dr. Manderson's office that she had paid Dr. Manderson's bill even though in fact the bill had not been paid. Finally, the Hearing Committee found that Ms. Brown violated several other Rules of Professional Conduct, including Rule 1.5 (c) (requiring written statement as to disbursement of settlement funds); Rule 1.15 (a) (requiring keeping of records as to client property in attorney's possession); and Rule 1.4 (a) and (b) (requiring attorney to keep client reasonably informed and to provide adequate explanation to client).

The Hearing Committee noted that disbarment is the presumptive sanction for lawyers who intentionally misappropriate client funds, unless extraordinary circumstances justify a less severe sanction. The Hearing Committee considered the evidence Ms. Brown submitted in mitigation, including that Ms. Brown had no prior disciplinary record; that Ms. Brown went through a difficult and high-risk pregnancy beginning in May 2009; that Ms. Brown and Mr. McGee were having

marital difficulties; that Ms. Brown had acknowledged her mistakes and eventually made payment to the doctors; and that witnesses testified to Ms. Brown's good character and community involvement. The Hearing Committee concluded that Ms. Brown's pregnancy did not substantially affect Ms. Brown's misconduct, because Ms. Brown did not learn she was pregnant until several months after she had received the settlement funds and the final bill from Dr. Manderson. The Hearing Committee also considered as an aggravating circumstance that Ms. Brown had lied during the evidentiary hearing, falsely claiming that she had given Mr. McGee funds to pay Dr. Manderson's bill and had given Ms. Gordon the money owed to Dr. Randolph. Considering the record as a whole, the Hearing Committee concluded that Ms. Brown had not shown extraordinary circumstances warranting a departure from the presumptive sanction of disbarment. The Hearing Committee therefore recommended that Ms. Brown be disbarred. The Board on Professional Responsibility makes the same recommendation.

## II.

Ms. Brown challenges the recommendation of disbarment on two principal grounds. First, she contends that the Hearing Committee erroneously discredited her version of events. Second, she contends that disbarment is an unduly harsh

sanction. As a threshold matter, Bar Counsel argues that Ms. Brown waived these contentions by failing to take exception to the report and recommendation of the Hearing Committee. We need not address Bar Counsel's waiver argument, because we are not persuaded by Ms. Brown's contentions.

**A.**

When considering a Report and Recommendation from the Board on Professional Responsibility, we must "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." D.C. Bar R. XI, § 9 (h). The Board, in turn, must "accept the findings of fact made by the Hearing Committee, which include credibility determinations, if they are supported by substantial evidence in the record, viewed as a whole." *In re Sabo*, 49 A.3d 1219, 1224 (D.C. 2012) (internal quotation marks omitted). This deference is warranted "because the Hearing Committee is the only decision-maker which had the opportunity to observe the witnesses and assess their demeanor." *Id.* (internal quotation marks omitted).

The Hearing Committee's report, which the Board adopted, carefully explained the Hearing Committee's reasons for discrediting Ms. Brown's claims that she had given Mr. McGee $1650 in cash to pay Dr. Manderson and had given

Ms. Gordon $1500 in cash to reflect the money owed to Dr. Randolph. With respect to Dr. Manderson, the Hearing Committee explained that Ms. Brown's claim was uncorroborated by any records; that Ms. Brown had told Dr. Manderson's office that she had paid the bill and that she would provide a copy of a cancelled check; that Ms. Brown never provided such a copy; that when Ms. Brown initially responded to Bar Counsel, she did not mention Mr. McGee but rather inaccurately claimed that Dr. Manderson's office did not send a final bill until February 2010; that Mr. McGee had not appeared at the hearing and thus could not be cross-examined about the contents of the proffered affidavit; that Dr. Manderson's office had made repeated efforts to obtain payment; and that Ms. Brown failed to respond or to pay the bill until after Ms. Gordon complained to Bar Counsel.

With respect to Dr. Randolph, the Hearing Committee explained that Ms. Gordon testified that Ms. Brown had never given Ms. Gordon $1500 in cash to reflect the money owed to Dr. Randolph; that Ms. Brown had no records to corroborate her claim; and that Ms. Brown had made statements both to Ms. Gordon and to Bar Counsel indicating that in fact Ms. Brown had not given Ms. Gordon the money owed to Dr. Randolph.

Finally, with respect to both doctors, the Hearing Committee noted that it had heard Ms. Brown's testimony and did not find her credible when she testified about her handling of the settlement proceeds.

We conclude that substantial evidence in the record supported the Hearing Committee's decision to discredit Ms. Brown's claims. Ms. Brown argues that the Hearing Committee did not explicitly address or adequately consider evidence that supported her claims, including her explanation that any misstatements to Bar Counsel were the product of her difficult personal circumstances at the time. The Hearing Committee, however, could not feasibly have discussed every piece of evidence bearing on Ms. Brown's credibility, nor was it required to try to do so. *See In re Morrell*, 684 A.2d 361, 370 (D.C. 1996) ("We have frequently noted that the finder of fact-an agency or in this case the Board [on Professional Responsibility]-may credit the evidence upon which it relies to the detriment of conflicting evidence and need not explain why it favored the evidence on one side over that on the other.") (internal quotation marks omitted). In sum, we conclude that the Hearing Committee adequately explained its credibility determinations, which were supported by substantial evidence in the record.

Ms. Brown more generally challenges the determinations that she intentionally misappropriated funds and made false statements with reckless disregard for the truth. Those challenges, however, depend on the premise that the Hearing Committee erred in discrediting Ms. Brown's version of events. Viewed in the light of the Hearing Committee's credibility determinations, the record amply supports the conclusions that Ms. Brown intentionally misappropriated funds and made false statements with reckless disregard for the truth. We therefore need not address Ms. Brown's challenge to the alternative conclusion that Ms. Brown in any event recklessly misappropriated funds.

**B.**

Ms. Brown also contends that disbarment is an unduly harsh sanction. We disagree.

This court will accept the Board's recommendation as to the appropriate sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9 (h)(1). "The presumptive sanction for intentional misappropriation, absent a showing of extraordinary circumstances, is disbarment." *In re Omwenga*, 49 A.3d 1235, 1244 (D.C. 2012) (per curiam) (internal quotation marks omitted).

"[M]itigating circumstances of the usual sort will suffice to overcome the presumption of disbarment only if they are especially strong and, where there are aggravating factors, they substantially outweigh any aggravating factors as well." *In re Pierson*, 690 A.2d 941, 950 (D.C. 1997) (citation and internal quotation marks omitted). We uphold the Board's conclusion that Ms. Brown failed to demonstrate extraordinary circumstances warranting a departure from the presumptive sanction of disbarment.

In arguing against disbarment, Ms. Brown relies on the following mitigating circumstances: she had no prior disciplinary record; at the time she responded to the disciplinary complaint, she was confronting difficult circumstances, including a high-risk pregnancy and marital problems; she admitted that she had made mistakes; her client was not financially harmed; she ultimately paid the doctors' bills; and witnesses testified to her good character and community involvement. We agree with the Board that these circumstances are not so extraordinary as to justify a departure from the presumptive sanction of disbarment, particularly given the aggravating circumstance that Ms. Brown showed disregard for the truth both in her testimony at the hearing and in her statements to Ms. Gordon, to Dr. Manderson's office, and to Bar Counsel. *See, e.g.*, *In re Cloud*, 939 A.2d 653, 663 (D.C. 2008) (evidence of attorney's good character and evidence that attorney was

facing medical and financial problems did not establish extraordinary circumstances warranting sanction other than disbarment in case of intentional misappropriation); *In re Pierson*, 690 A.2d at 949-51 (same as to evidence that attorney was facing financial problems, had history of community involvement, accepted responsibility, had no prior disciplinary record, and was forthright with disciplinary authorities); *In re Robinson*, 583 A.2d 691, 692 (D.C. 1990) (per curiam) (same where small amount of money was involved, misappropriation was brief, client was not harmed financially, attorney was inexperienced, attorney had no prior disciplinary record, and evidence of good character was introduced); *In re Addams*, 579 A.2d 190, 199 (D.C. 1990) (en banc) (same where client was not harmed, attorney had no prior disciplinary record, and attorney had claim of entitlement to misappropriated funds, but attorney's conduct was aggravated by dishonesty).

For the reasons set forth above, Takisha Brown is disbarred from the practice of law in the District of Columbia. For purposes of reinstatement, the period of disbarment shall run from the date on which Ms. Brown files an affidavit in accordance with District of Columbia Bar Rule XI, § 14 (g).

*So ordered.*