*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-BG-848

IN RE JUAN LORENZO RODRIGUEZ-QUESADA, RESPONDENT.

A Suspended Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 487484)

On Report and Recommendation of the
Board on Professional Responsibility
(BDN-126-10)

(Argued May 21, 2015                         Decided August 13, 2015)

*Melvin G. Bergman* for respondent.

*Jelani C. Lowery*, Senior Staff Attorney, with whom *Wallace E. Shipp, Jr.*, Bar Counsel, *Jennifer P. Lyman*, Senior Assistant Bar Counsel, and *Traci M. Tait*, Assistant Bar Counsel, were on the brief, for the Office of Bar Counsel.

Before EASTERLY and MCLEESE, *Associate Judges*, and KING, *Senior Judge*.

PER CURIAM: The Board on Professional Responsibility concluded that respondent Juan Lorenzo Rodriguez-Quesada violated numerous Rules of Professional Conduct during his representation of several clients in immigration matters. The Board recommends that this court suspend Mr. Rodriguez-Quesada for two years and, as a condition of reinstatement, require Mr. Rodriguez-Quesada to pay restitution to all but one of the affected clients. Mr. Rodriguez-Quesada

challenges the conclusions of the Board as to many of the rule violations and also argues that any suspension should be brief. The Office of Bar Counsel defends the Board's findings of rule violations and the imposition of a two-year suspension, but argues that this court should condition reinstatement on a showing of fitness and payment of restitution to all of the affected clients. We accept the Board's findings and conclude that Mr. Rodriquez-Quesada should be suspended for two years, with reinstatement conditioned on a showing of fitness and payment of restitution to all of the affected clients.

## I.

The Board's report and recommendation rests on the following factual conclusions, which the Board largely adopted from the factual findings of the Hearing Committee.

Mr. Rodriguez-Quesada became a member of the Bar of the Commonwealth of Puerto Rico in 1975 and of the Bar of the District of Columbia in 2005. From 2003 through 2008, Mr. Rodriguez-Quesada practiced immigration law. During that period, Mr. Rodriguez-Quesada handled from 400 to 500 immigration cases.

The disciplinary proceedings in this case focus on four specific matters, which we discuss in turn.

**A.**

In August 2006, Mr. Rodriguez-Quesada agreed to represent Hector Abarca, an El Salvadoran national, in connection with Mr. Abarca's effort to renew a work permit. Specifically, Mr. Rodriguez-Quesada signed a retainer agreement in which he agreed to file an asylum application, an application for relief under the Nicaraguan Adjustment and Central American Relief Act (NACARA), and an application for cancellation of removal. Mr. Rodriguez-Quesada did not explain the retainer agreement or his case strategy to Mr. Abarca. Mr. Rodriguez-Quesada did little work on the case between August 2006 and February 2007. At an initial court hearing in February 2007, Mr. Rodriguez-Quesada told an immigration judge that Mr. Abarca was seeking cancellation of removal. Mr. Rodriguez-Quesada had not obtained information necessary to make such a request and never did so, despite having been told to do so by the immigration judge.

Proceedings in the matter were continued until January 2008. During this time, Mr. Rodriguez-Quesada had little contact with Mr. Abarca except to obtain

payment. When Mr. Abarca or his wife asked about the status of the case, Mr. Rodriguez-Quesada got angry, was discourteous, and threatened to withdraw if they questioned what he was doing. In October 2007, Mr. Rodriguez-Quesada filed an application for temporary protected status, but Mr. Abarca was not eligible for temporary protected status. Moreover, the application Mr. Rodriguez-Quesada filed was missing essential information.

In December 2007, the immigration authorities sent Mr. Rodriguez-Quesada two notices that Mr. Abarca should appear for proceedings in January 2008. Mr. Rodriguez-Quesada did not send those notices to Mr. Abarca. In January 2008, Mr. Rodriguez-Quesada filed a NACARA application and an application for cancellation of removal. Mr. Rodriguez-Quesada failed to have Mr. Abarca sign those documents. In one of the applications, Mr. Rodriguez-Quesada stated that Mr. Abarca was a habitual drunkard without adequately exploring the accuracy of the statement, which could have precluded Mr. Abarca from obtaining relief.

In January 2008, the relationship between Mr. Rodriguez-Quesada and Mr. Abarca deteriorated, because Mr. Rodriguez-Quesada was insisting on additional payments, demanding that Mr. Abarca provide information of questionable relevance, and threatening to withdraw if Mr. Abarca did not comply. Mr. Abarca

asked for return of his case file, but Mr. Rodriguez-Quesada refused unless Mr. Abarca paid the outstanding balance on Mr. Rodriguez-Quesada's fee. Mr. Rodriguez-Quesada returned Mr. Abarca's file only after Mr. Abarca called the police for assistance.

Mr. Abarca subsequently hired a new lawyer, who explained Mr. Abarca's options, obtained necessary information, and filed an additional petition for relief. Mr. Abarca ultimately obtained relief as result of the NACARA petition. Mr. Abarca subsequently sued Mr. Rodriguez-Quesada in small-claims court in Virginia, seeking return of fees, but did not prevail.

**B.**

In January 2007, Gia Koerner-Goodrich retained Mr. Rodriguez-Quesada to obtain a certification of United States citizenship for her nephew, who was born and lived in Italy but whose mother and grandfather were United States citizens. In the retainer agreement, Ms. Koerner-Goodrich agreed to pay any necessary filing fees and Mr. Rodriguez-Quesada agreed to prepare and expeditiously file all necessary forms, keep Ms. Koerner-Goodrich informed, and respond promptly to her inquiries. Ms. Koerner-Goodrich provided all the necessary information to Mr.

Rodriguez-Quesada by March 2007, but Mr. Rodriguez-Quesada delayed three months before sending the documents to Italy to be signed and then delayed six more weeks before attempting to file the documents.

The immigration authorities increased the applicable filing fee from $255 to $460, effective July 30, 2007. Mr. Rodriguez-Quesada mailed the application on July 29, 2007, but enclosed only $250. The immigration authorities therefore rejected the application and required resubmission with payment of a $460 filing fee. Mr. Rodriguez-Quesada did not inform Ms. Koerner-Goodrich of the problem until nine months later, when Ms. Koerner-Goodrich asked about the status of the case. Mr. Rodriguez-Quesada agreed to refile the application, but asked Ms. Koerner-Goodrich to pay the higher filing fee. Ms. Koerner-Goodrich refused to do so, instead discharging Mr. Rodriguez-Quesada and asking for a return of the retainer, the filing fee, and her case file. Mr. Rodriguez-Quesada initially did not respond or return the requested items. After receiving a letter from the Better Business Bureau, Mr. Rodriguez-Quesada did return the file and the filing fee. Mr. Rodriguez-Quesada never returned the retainer. Ms. Koerner-Goodrich hired a new attorney who obtained a citizenship certification but had to duplicate the work previously done on the case because of the passage of time.

## C.

In September 2006, Saad Belhmira, a Moroccan national, retained Mr. Rodriguez-Quesada to help get Mr. Belhmira's student visa reinstated. In the retainer agreement, Mr. Belhmira agreed to pay $2,000 and Mr. Rodriguez-Quesada agreed to keep Mr. Belhmira informed and to respond promptly to communications. After Mr. Rodriguez-Quesada told Mr. Belhmira that the fee had increased to $4,000 because of an increased scope of work, Mr. Belhmira agreed to pay the larger amount.

Mr. Rodriguez-Quesada subsequently told Mr. Belhmira that Mr. Belhmira had three options to avoid deportation: reinstating his student visa, getting a sponsor, or marrying a United States citizen. Mr. Rodriguez-Quesada gave Mr. Belhmira very little guidance about how to find a sponsor or get his student visa reinstated. Mr. Rodriguez-Quesada did not advise Mr. Belhmira that, because removal proceedings had begun, there would be a rebuttable presumption that any marriage to a United States citizen was fraudulent.

On March 9, 2007, Mr. Belhmira married a United States citizen. Although an immigration hearing was scheduled for March 28, 2007, Mr. Rodriguez-

Quesada did not prepare the Belhmiras for the hearing and did not meet with Ms. Belhmira until the day of the hearing. The hearing was continued until February 2008 to permit Mr. Rodriguez-Quesada to file a marriage petition. The Belhmiras provided pertinent information to Mr. Rodriguez-Quesada by October 2007 and signed the necessary forms in December 2007. Because Mr. Rodriguez-Quesada erroneously thought that he did not have Ms. Belhmira's birth certificate, he did not file the marriage petition before the February 2008 hearing. At that hearing, Mr. Rodriguez-Quesada falsely told the immigration judge that the petition had been filed. The immigration judge continued the hearing. Mr. Rodriguez-Quesada filed the petition in April 2008.

After several continuances, the hearing was set for July 2009. Mr. Rodriguez-Quesada did not communicate with the Belhmiras from February 2008 until November 2008, did not thereafter meet with the Belhmiras before the July 2009 hearing, and failed to respond to Mr. Belhmira's inquiry about the date of the hearing. Mr. Rodriguez-Quesada failed to appear for the July 2009 hearing. Mr. Belhmira, who had learned the date of the hearing from the immigration court, appeared and explained that he did not know why Mr. Rodriguez-Quesada was not present and did not know the status of the marriage petition.

After trying unsuccessfully to contact Mr. Rodriguez-Quesada, Mr. Belhmira sent Mr. Rodriguez-Quesada a letter terminating the representation and requesting the case file. Mr. Rodriguez-Quesada did not respond. Mr. Belhmira subsequently hired a new lawyer, and the marriage petition eventually was granted. Mr. Rodriguez-Quesada did not return Mr. Belhmira's case file until October 2009, a month after Mr. Belhmira filed a complaint with Bar Counsel.

**D.**

In August 2006, Mr. Rodriguez-Quesada was retained by Erlin Ramirez, a Honduran national, and Iris Vargas Ramirez, a United States citizen. Mr. Ramirez entered the United States unlawfully in 1988 and was deported in absentia in 1997 after he failed to appear at an immigration hearing in California. After moving to Maryland to avoid deportation, Mr. Ramirez married Ms. Ramirez in 2001. The Ramirezes paid Mr. Rodriguez-Quesada $2,500 for his services.

It was not clear how Mr. Rodriguez-Quesada hoped to help Mr. Ramirez avoid deportation. Ms. Ramirez thought that Mr. Rodriguez-Quesada would seek to reopen the California proceeding, and if that was unsuccessful Mr. Rodriguez-Quesada would file a marriage petition. On that understanding, Ms. Ramirez

signed a marriage petition in September 2006. Without advising his clients, Mr. Rodriguez-Quesada filed the marriage petition in October 2006. The Ramirezes were concerned that the filing might lead to Mr. Ramirez's deportation, particularly after they received a notice in October 2007 from the immigration authorities directing them to appear for an interview in November 2007. Mr. Ramirez did not attend the interview, which was continued. After learning from another lawyer that Mr. Ramirez would likely have been deported if he had attended the interview, Mr. Rodriguez-Quesada advised the Ramirezes to sell their house and hide.

Mr. Rodriguez-Quesada had virtually no contact with the Ramirezes from November 2007 through July 2008. After receiving a notice from the immigration authorities to appear for an interview in July 2008, the Ramirezes repeatedly tried to contact Mr. Rodriguez-Quesada, but he did not return their calls. The Ramirezes ultimately were able to arrange a meeting with Mr. Rodriguez-Quesada, at which time the representation was terminated. Mr. Rodriguez-Quesada refused to return any portion of the fee paid by the Ramirezes. The Ramirezes hired another lawyer, and Mr. Ramirez apparently obtained permanent resident status.

**II.**

Based on the foregoing factual conclusions, the Board determined by clear and convincing evidence that Mr. Rodriguez-Quesada violated numerous Rules of Professional Conduct. Specifically, the Board determined that Mr. Rodriguez-Quesada violated Rules 1.1 (a) and (b) (lack of competence, skill, and care) (Abarca, Belhmira, and Ramirez matters); 1.3 (a) and (c) (lack of diligence and promptness) (all four matters); 1.3 (b)(2) (intentional prejudice to client) (Abarca matter); 1.4 (a) (failure to keep client reasonably informed) (all four matters); 1.4 (b) (failure to explain matter to client) (Abarca, Belhmira, and Ramirez matters); 1.16 (d) (failure to return files or unearned fees on termination) (all four matters); 3.3 (a)(1) (knowingly making false statement to tribunal) (Belhmira matter); and 8.4 (c) and (d) (dishonesty and serious interference with administration of justice) (Belhmira matter).

We "shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record . . . ." D.C. Bar R. XI, § 9 (h)(1). Similarly, the Board must defer to the factual findings of the Hearing Committee if those findings are supported by substantial evidence. *See, e.g.*, *In re Brown*, 112 A.3d 913, 917 (D.C. 2015) (per curiam). We owe no deference to the Board's

legal conclusions. *In re Yelverton*, 105 A.3d 413, 420 (D.C. 2014), *petition for cert. filed*, No. 15-5001 (U.S. June 30, 2015). We accept the Board's conclusion that Mr. Rodriguez-Quesada violated each of the specified rules.

## A.

With respect to the Abarca matter, Mr. Rodriguez-Quesada (1) argues that he was the one who filed the NACARA petition that ultimately resulted in relief for Mr. Abarca; (2) notes that there were factual disputes before the Hearing Committee; and (3) conclusorily asserts that there was inadequate proof that Mr. Rodriguez-Quesada's filings were inappropriate. We are not persuaded by these arguments.

First, although Mr. Rodriguez-Quesada did do one thing that ultimately bore fruit for his client, that does not constitute a defense to the numerous other serious deficiencies found by the Board, supported by the record, and not specifically challenged by Mr. Rodriguez-Quesada. *See generally, e.g.*, *In re Shelnutt*, 719 A.2d 96, 97 (D.C. 1998) (per curiam) ("Professional disciplinary violations arise from malfeasance, not the actual harm imposed upon a client. . . . [P]rejudice to a client is not an element of a charge of neglect, although . . . it may be relevant on

the issue of sanctions.") (brackets and internal quotation marks omitted). Specifically, the Board found that Mr. Rodriguez-Quesada failed to seek an extension of Mr. Abarca's asylum application; never filed for cancellation of removal despite promising to do so; failed to seek renewal of Mr. Abarca's work permit, instead filing an application for a new work permit for which Mr. Abarca was not qualified; filed an application for temporary protected status even though Mr. Abarca was not eligible for that status; failed to obtain necessary information even after being admonished by an immigration judge to do so; omitted necessary information from a filing; filed a pleading with a damaging description of his client as a habitual drunkard without adequately investigating the matter; and neglected Mr. Abarca's case.

Second, we see no basis to look behind the Hearing Committee's resolution, adopted by the Board, of the factual disputes concerning Mr. Rodriguez-Quesada's representation of Mr. Abarca. D.C. Bar R. XI, § 9 (h)(1).

Third, notwithstanding Mr. Rodriguez-Quesada's conclusory statement to the contrary, the record amply supports the Board's findings of rule violations in connection with Mr. Rodriguez-Quesada's representation of Mr. Abarca.

**B.**

With respect to the Koerner-Goodrich matter, Mr. Rodriguez-Quesada does not make specific arguments as to how the Board erred, instead simply summarizing the facts and proceedings before the Hearing Committee and the Board. Such briefing is generally insufficient to present an issue for this court's decision. *Cf. In re Kline*, 11 A.3d 261, 265 (D.C. 2011) (court in disciplinary proceeding did not consider argument that was not briefed and was only raised during oral argument); *Bardoff v. United States*, 628 A.2d 86, 90 n.8 (D.C. 1993) (where "[a]ppellants provide[d] no supporting argument in their brief" for assertion on appeal, court considered argument abandoned on appeal). In any event, the record supports the Board's conclusions that Mr. Rodriguez-Quesada failed to act diligently, to keep his client reasonably informed, and to promptly return files and fees in the Koerner-Goodrich matter.

**C.**

With respect to the Belhmira matter, Mr. Rodriguez-Quesada argues that the record does not adequately support the finding that Mr. Rodriguez-Quesada knowingly made a false statement to the immigration judge about filing the

marriage petition. We disagree. Having both reviewed a transcript and listened to an audio recording of the proceedings, we see no basis upon which to overturn the conclusions of the Hearing Committee and the Board that Mr. Rodriguez-Quesada made an intentionally false statement to the immigration judge. Mr. Rodriguez-Quesada further points out that successor counsel ultimately filed a marriage petition that was granted. As we have already noted, however, the absence of prejudice to the client's legal rights is not generally a defense in disciplinary proceedings. *In re Shelnutt*, 719 A.2d at 97.

## D.

With respect to the Ramirez matter, Mr. Rodriguez-Quesada argues that he made some efforts on the Ramirezes' behalf, including filing the marriage petition that was ultimately granted. Here too, the fact that one thing Mr. Rodriguez-Quesada did ultimately bore fruit for his client is not a defense to the numerous other serious deficiencies found by the Board, supported by the record, and not specifically challenged by Mr. Rodriguez-Quesada. *In re Shelnutt*, 719 A.2d at 97. Specifically, the record amply supports the Board's findings that Mr. Rodriguez-Quesada failed to discuss with the Ramirezes the risks associated with filing a marriage petition; failed to consult with them before filing the petition; failed to

prepare them for the hearing on the petition; and failed to keep them informed about the case and to respond to their inquiries.

In sum, we accept the Board's conclusions that Mr. Rodriguez-Quesada committed numerous rule violations.

## III.

We turn now to the issue of sanction. The Board recommended that Mr. Rodriguez-Quesada be suspended for two years and be required, as a condition of reinstatement, to make restitution to Ms. Koerner-Goodrich, Mr. Belhmira, and the Ramirezes. The Board declined, however, to condition reinstatement on a showing of fitness or payment of restitution to Mr. Abarca.

"Our Rules provide that this Court 'shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.'" *In re Vohra*, 68 A.3d 766, 771 (D.C. 2013) (quoting D.C. Bar R. XI, § 9 (h)(1)). Thus, "[a] sanction recommendation from the Board comes to us with a strong presumption in favor of its imposition." *Id.* (internal quotation marks omitted). In

general, "if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *Id.* (internal quotation marks omitted). "Ultimately, however, the system of attorney discipline, including the imposition of sanctions, is the responsibility and duty of this court." *In re Kanu*, 5 A.3d 1, 14 (D.C. 2010) (internal quotation marks omitted). Where this court takes a significantly different view of the seriousness of an attorney's conduct, the court thus has not hesitated to reach its own conclusion as to the appropriate sanction. *See, e.g.*, *In re Goffe*, 641 A.2d 458, 464 (D.C. 1994) (per curiam).

In determining what sanction to impose upon an attorney for violations of the Rules of Professional Conduct, we consider a number of factors, including, "(1) the nature and seriousness of the misconduct; (2) prior discipline; (3) prejudice to the client; (4) the [attorney's] attitude; (5) circumstances in mitigation and aggravation; and (6) the mandate to achieve consistency." *In re Vohra*, 68 A.3d at 771. We also consider "the moral fitness of the attorney" and "the need to protect the public, the courts, and the legal profession . . . ." *In re Howes*, 52 A.3d 1, 15 (D.C. 2012) (internal quotation marks omitted). "The purpose of imposing discipline is to serve the public and professional interests identified and to deter

future and similar conduct rather than to punish the attorney." *In re Kanu*, 5 A.3d at 16 (internal quotation marks omitted).

**A.**

Mr. Rodriguez-Quesada argues that any suspension should be brief, because (1) his clients suffered no injury to their legal rights; (2) he no longer is practicing immigration law; (3) he was overwhelmed by the volume of his immigration practice; and (4) his conduct may have been neglectful but was not egregious. We conclude that a two-year suspension is warranted.

Mr. Rodriguez-Quesada committed numerous serious violations of the Rules of Professional Conduct in four different matters. His conduct reflects a pattern of lack of competence, lack of diligence, neglect of his clients' cases, failure to communicate with his clients, and refusal to return case files and unearned payments. In one case, he intentionally made a false statement to an immigration judge and then gave false testimony to the Hearing Committee about having done so. His rule violations financially injured his clients, who were required to pay new counsel to handle matters they had already paid Mr. Rodriguez-Quesada to handle. Moreover, as the Board noted, Mr. Rodriguez-Quesada's clients "were

particularly vulnerable[,] as their ability to remain in the United States and with their families was hanging on his efforts." With minor exceptions, Mr. Rodriguez-Quesada failed to acknowledge his violations and exhibited no remorse.

Although Mr. Rodriguez-Quesada has no prior disciplinary history, we conclude that his violations of the Rules of Professional Conduct were sufficiently numerous and serious as to warrant a two-year suspension. *See, e.g.*, *In re Mintz*, 626 A.2d 926, 927 (D.C. 1993) (per curiam) ("[A] two-year suspension, with reinstatement conditioned upon a showing of fitness, is within the range of sanctions that we have previously ordered for similar cases of gross and persistent negligence of client matters.") (citing cases; citation and internal quotation marks omitted).

We also conclude that a fitness requirement is warranted. "[T]o justify conditioning the reinstatement of a suspended attorney on proof of rehabilitation, the record in the disciplinary proceeding must contain clear and convincing evidence that casts a serious doubt upon the attorney's continuing fitness to practice law." *In re Cater*, 887 A.2d 1, 24 (D.C. 2005). Given its scope and gravity, Mr. Rodriguez-Quesada's conduct in our view casts serious doubt on Mr. Rodriguez-Quesada's fitness to practice law. Imposing a fitness requirement also

would be more consistent with prior dispositions involving comparable conduct. *See, e.g.*, *In re Ukwu*, 926 A.2d 1106, 1109-20 (D.C. 2007) (imposing two-year suspension with fitness requirement, based on pervasive neglect of five clients and dishonesty in connection with one matter); *In re Mintz*, 626 A.2d at 927 (noting cases in which court imposed fitness requirement in cases involving "gross and persistent negligence of client matters").

We are not persuaded by the Board's reasons for declining to recommend a fitness requirement. First, we view Mr. Rodriguez-Quesada's pattern of inexcusable neglect of his clients' interests, his dishonesty to a judge and the Hearing Committee, and his lack of remorse as demonstrating "a pattern of misconduct or dishonest behavior that raises serious questions as to [Mr. Rodriguez-Quesada's] integrity or character." Second, the Board's statement that Mr. Rodriguez-Quesada cooperated with Bar Counsel is contradicted by the Board's conclusions that Mr. Rodriguez-Quesada testified falsely before the Hearing Committee, blamed his clients for his failings, and baselessly accused his clients of committing perjury. Third, we do not share the Board's conclusion that Mr. Rodriguez-Quesada's rule violations are at bottom attributable to having taken on too many cases. Mr. Rodriguez-Quesada's rule violations are too serious and extensive to be viewed as the unavailing efforts of an overburdened attorney acting

in good faith to protect his clients' interests. Finally, although Mr. Rodriguez-Quesada has no prior disciplinary history and is no longer acting as an immigration attorney, those considerations are outweighed by the concerns created by the scope and gravity of Mr. Rodriguez-Quesada's rule violations in these matters.

We recognize that we ordinarily owe deference to the Board's recommendation as to the proper sanction to be imposed. On the issue of the need for a fitness requirement, however, we take a significantly different view from the Board as to the seriousness of Mr. Rodriguez-Quesada's conduct, and we are convinced that a fitness requirement is warranted.

Finally, we agree with Bar Counsel that Mr. Rodriguez-Quesada should be required, as a condition of reinstatement, to make restitution to Mr. Abarca. The Board found that Mr. Rodriguez-Quesada in numerous respects either failed to perform the services he had promised to perform for Mr. Abarca or performed those services incompetently and in a manner detrimental to Mr. Abarca's interests. Moreover, although Mr. Abarca eventually obtained relief as a result of the NACARA application Mr. Rodriguez-Quesada had filed, Mr. Abarca was required to hire a new attorney at additional expense after Mr. Rodriguez-Quesada's representation was terminated.

These findings warrant requiring restitution in Mr. Abarca's case, just as the Board required restitution to the clients in the other three matters at issue in this case. *See* D.C. Bar R. XI, § 3 (b) (court may order restitution to persons financially injured by attorney's conduct); D.C. R. Prof. Conduct 1.16 (d) (in connection with termination of representation, attorney must refund any advance payment of fee that has not been earned).

The Board acknowledged that Mr. Rodriguez-Quesada was not entitled to retain the entire fee Mr. Abarca had paid. Nevertheless, the Board declined to order restitution, for three reasons: (1) Mr. Abarca had paid Mr. Rodriguez-Quesada $4,200 rather than the $5,000 due under the retainer agreement; (2) Mr. Rodriguez-Quesada had made some efforts on Mr. Abarca's behalf; and (3) Mr. Abarca had unsuccessfully sued Mr. Rodriguez-Quesada in small-claims court in Virginia for return of fees, and Bar Counsel therefore bore "a somewhat greater burden than otherwise might be the case to show [that Mr. Rodriguez-Quesada] was not entitled to retain any portion of the fee." The first two considerations are potentially relevant to the amount of restitution, but do not support an outright denial of restitution, at least barring a more detailed inquiry into the precise benefit to Mr. Abarca of Mr. Rodriguez-Quesada's efforts. Moreover, Mr. Rodriguez-

Quesada made some efforts in the other three matters as well, and the Board nevertheless awarded those clients restitution. As to the unsuccessful action to recover fees in small-claims court, the Board took the view that Bar Counsel was not estopped by the result of that action, and Mr. Rodriguez-Quesada has not argued otherwise in this court. Given that undisputed premise, which we accept for present purposes, it is difficult to understand the basis for imposing an unspecified higher burden on Bar Counsel on the issue of restitution. Moreover, Bar Counsel in any event would not appropriately be required to show that Mr. Rodriguez-Quesada was not entitled to retain "any portion of the fee." Rather, partial restitution could be warranted as long as Bar Counsel showed that at least some portion of the fee was unearned.

For these reasons, we conclude that Mr. Rodriguez-Quesada should be required to make appropriate restitution to Mr. Abarca as a condition of reinstatement. The Board did not determine the precise amount of restitution as to Mr. Rodriguez-Quesada's other clients, instead leaving that amount to be determined in the event that Mr. Rodriguez-Quesada sought reinstatement. *See, e.g.*, *In re Omwenga*, 49 A.3d 1235, 1243 (D.C. 2012) (per curiam) ("Where there is a question about the exact amount of the restitution, the Court will defer consideration of the restitution issue until the respondent applies for

reinstatement."). We therefore see no need for the Board to determine a precise amount of restitution at this time.

*  *  *  *  *

For the foregoing reasons, Mr. Rodriguez-Quesada is suspended from the practice of law in the District of Columbia for a period of two years. For purposes of reinstatement, the suspension shall run from the date on which Mr. Rodriguez-Quesada files the affidavit required by District of Columbia Bar Rule XI, § 14 (g). Reinstatement shall be conditioned on a showing of fitness and on payment of restitution to Mr. Abarca, Ms. Koerner-Goodrich, Mr. Belhmira, and the Ramirezes.

*So ordered*.