*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-BG-884

IN RE JOHN T. SZYMKOWICZ,
JOHN P. SZYMKOWICZ,
LESLIE D. SILVERMAN, and
ROBERT KING, RESPONDENTS.

FILED 11/8/2018
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Members and Former Member of the Bar
of the District of Columbia Court of Appeals
of the District of Columbia
(Bar Registration Nos. 946079, 462146, 448188, and 922575)

On Report and Recommendation
of the Board on Professional Responsibility
(09-BD-48, 09-BD-49, 09-BD-50, 09-BD-51)

(Argued April 11, 2018                                Decided November 8, 2018)

*Robert N. Levin* for respondents John T. Szymkowicz and John P. Szymkowicz.

*Robert W. King*, pro se.

*Leslie D. Silverman*, pro se, made an appearance.

*Julia L. Porter*, Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, and *Jennifer P. Lyman*, Senior Assistant Disciplinary Counsel, were on the brief, for petitioner.

Before THOMPSON and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

Opinion for the court PER CURIAM.

Dissenting opinion by *Senior Judge* STEADMAN at page 16.

PER CURIAM: This attorney-discipline matter arises from respondents' representation of Genevieve Ackerman. In its initial report and recommendation, the Board on Professional Responsibility concluded that respondents had not been shown to have violated the District of Columbia Rules of Professional Conduct in connection with their representation of Ms. Ackerman, except that respondent Robert King violated D.C. R. Prof. Conduct 1.5 (b), by failing to obtain a written retainer agreement from Ms. Ackerman.

In *In re Szymkowicz*, 124 A.3d 1078 (D.C. 2015) (per curiam), this court accepted the Board's conclusions in a number of respects, but referred the matter back to the Board for further proceedings with respect to whether respondents violated D.C. R. Prof. Conduct 1.7, which governs conflicts of interest. *Id.* at 1082-89. Specifically, we concluded that, because of the risks of conflicts of interest between Ms. Ackerman and her son, Dr. Stephen Ackerman, none of the respondents could permissibly have represented Ms. Ackerman unless the respondents obtained Ms. Ackerman's informed consent to the representation, pursuant to Rule 1.7 (c). *Id.* at 1085-88.

On further consideration, the Board concluded that Disciplinary Counsel had failed to prove by clear and convincing evidence that respondents John T. and John P. Szymkowicz, who are father and son, failed to obtain informed consent from Ms. Ackerman. On the other hand, the Board concluded that Mr. King and respondent Leslie D. Silverman violated Rule 1.7 (b), because neither Mr. King nor Ms. Silverman offered evidence that Ms. Ackerman gave them informed consent. The Board, however, recommended against imposing sanctions against Mr. King or Ms. Silverman on the basis of their violations of Rule 1.7. Disciplinary Counsel takes exception to the Board's conclusions and recommendations. We adopt the Board's conclusion that the Szymkowiczes were not shown by clear and convincing evidence to have violated Rule 1.7. As a sanction for Mr. King's violation of Rule 1.7, we publicly censure Mr. King in this opinion. Because Ms. Silverman was disbarred by consent in a separate matter, *In re Silverman*, 175 A.3d 89 (D.C. 2017) (per curiam), we dismiss the current disciplinary proceeding against Ms. Silverman as moot. *Cf., e.g.*, *In re McCoole*, 791 A.2d 910 (D.C. 2002) (per curiam) (where respondent was disbarred in one disciplinary proceeding, court dismissed second disciplinary proceeding as moot).

**I.**

The facts in this matter are discussed in some detail in our initial opinion in this case. *In re Szymkowicz*, 124 A.3d at 1079-82. In brief, Ms. Ackerman, who was then eighty-five years old, set up a trust in 2002 to benefit both herself and Dr. Ackerman. *Id.* at 1079. Dr. Ackerman soon raised issues about the administration and validity of the trust, and Dr. Ackerman hired the Szymkowiczes to represent him. *Id.* at 1080. In 2005, the Szymkowiczes began to also represent Ms. Ackerman. *Id.* After extensive litigation, the courts upheld the trust. *Id.* at 1080-81.

In March 2007, John T. Szymkowicz withdrew from one pending case, because of a concern that he would be called as a witness in the case. *In re Szymkowicz*, 124 A.3d at 1081. Ms. Silverman and Mr. King subsequently represented Ms. Ackerman in that case and also with respect to related matters. *Id.* Ms. Silverman was paid by Dr. Ackerman from Ms. Ackerman's funds, and it was Dr. Ackerman who retained Mr. King to act as Ms. Ackerman's attorney in one of the related matters. *Id.* While representing Ms. Ackerman, Ms. Silverman and Mr. King communicated with Dr. Ackerman, who held Ms. Ackerman's power of attorney (POA). *Id.*

There was a substantial dispute before the Hearing Committee as to whether Ms. Ackerman was competent during the relevant time period, or whether instead Ms. Ackerman was not competent and respondents knew or should have known that she was incompetent and wrongfully took advantage of Ms. Ackerman to benefit themselves and Dr. Ackerman. *In re Szymkowicz*, 124 A.3d at 1081-86. The Hearing Committee found that although Ms. Ackerman had some mental limitations, she was competent. *Id.* at 1082. The Board accepted that conclusion in its initial report and recommendation, and this court did the same in our initial decision. *Id.* at 1082-86.

On the question whether the Szymkowiczes obtained informed consent from Ms. Ackerman, the Hearing Committee heard and credited testimony that John T. Szymkowicz "many times" discussed with Ms. Ackerman potential conflicts and risks arising out of John T. Szymkowicz's joint representation of Ms. Ackerman and Dr. Ackerman. Specifically, John T. Szymkowicz testified that he explained to Ms. Ackerman that (1) she could be represented by another lawyer if she desired; (2) the contemplated litigation could cost tens of thousands of dollars, given that she would be paying her own legal fees as well as those of the trust

defending against her suit; and (3) if she was successful in challenging the validity of the trust, her son could squander her assets.

In its second report and recommendation, the Board analyzed the issue of informed consent as follows. First, Disciplinary Counsel bears the burden of proving by clear and convincing evidence that a respondent violated a Rule of Professional Conduct. *See, e.g.*, *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001) (noting general rule that "the burden of proving the disciplinary charges rests with [Disciplinary] Counsel") (brackets and internal quotation marks omitted). If Disciplinary Counsel presents evidence of a conflict of interest pursuant to Rule 1.7 (b), a respondent may present evidence in support of the contention that the respondent obtained informed consent pursuant to Rule 1.7 (c). If a respondent offers such evidence, then Disciplinary Counsel must prove by clear and convincing evidence that the respondent did not in fact obtain informed consent.

Applying that framework, the Board concluded that the Szymkowiczes had introduced evidence of informed consent and that Disciplinary Counsel had failed to prove by clear and convincing evidence that they had failed to obtain informed consent. Although John P. Szymkowicz did not personally discuss conflicts of interest with Ms. Ackerman, the Board concluded that John P. Szymkowicz

reasonably relied upon assurances from his father on the issue. We do not understand Disciplinary Counsel to argue at this juncture that John P. Szymkowicz violated Rule 1.7 even if his father did not, so we hereinafter focus on the conduct of John T. Szymkowicz in assessing whether the Szymkowiczes were shown to have violated Rule 1.7.

With respect to Mr. King, the Board concluded that Disciplinary Counsel had established a violation of Rule 1.7 but recommended against imposing a sanction for that violation. The Board concluded that although Mr. King should not have relied on Ms. Ackerman's POA to consult with Dr. Ackerman, rather than dealing directly with Ms. Ackerman and inquiring into possible conflicts of interests, that was a novel conclusion reached by the court in *In re Szymkowicz*, and Mr. King should not be disciplined for failing to foresee that conclusion. The Board also accepted the Hearing Committee's finding that Ms. Ackerman was not harmed by Mr. King's failure to obtain informed consent, because Ms. Ackerman's objectives coincided with the actions Mr. King took on her behalf. Finally, the Board noted that Mr. King's sole prior discipline was a public reprimand in Maryland and that there was no evidence that Mr. King acted dishonestly.

## II.

We accept the Board's factual findings if they are supported by substantial evidence. D.C. Bar R. XI, § 9 (h)(1). We review de novo the Board's conclusions of law. *In re Johnson*, 158 A.3d 913, 918 (D.C. 2017). We will adopt the Board's recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI § 9 (h)(1).

## A.

We turn first to the question whether Disciplinary Counsel established that the Szymkowiczes violated Rule 1.7. Under that Rule, "a lawyer shall not represent a client with respect to a matter if, [among other things] . . . [s]uch representation will be or is likely to be adversely affected by representation of another client," unless "[e]ach potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation." D.C. R. Prof. Conduct 1.7 (b)(2), (c)(1). "Disclosure and informed consent are not mere formalities. Adequate disclosure requires such

disclosure of the parties and their interests and positions as to enable each potential client to make a fully informed decision as to whether to proceed with the contemplated representation." D.C. R. Prof. Conduct 1.7, Comment [27].

"In the end, this case turns on the allocation of the burden of proof." *In re Allen*, 27 A.3d 1178, 1187 (D.C. 2011). Under the Board's rules, "Disciplinary Counsel shall have the burden of proving violations of disciplinary rules by clear and convincing evidence." Bd. of Prof. Resp. R. 11.6 (2016). As previously noted, our cases are to the same effect. *See, e.g.*, *In re Anderson*, 778 A.2d at 335. The Board in this case adopted an approach under which, once Disciplinary Counsel establishes a conflict of interest, the burden of production shifts to the respondent to "offer evidence of informed consent." If the respondent offers such evidence, the Board must prove by clear and convincing evidence that informed consent was not obtained.

We assume without deciding that it was permissible for the Board to shift a burden of production to respondents to introduce evidence of informed consent. Disciplinary Counsel suggests that the Board misapplied its own burden-shifting approach, by failing to require that respondents introduce evidence sufficient to establish a prima facie case of informed consent. We do not agree that the Board

misapplied its own approach. The Board's approach is not tied to a prima facie showing, but rather by its terms is tied to the introduction of "any evidence of informed consent." In the present case, John T. Szymkowicz indisputably presented evidence of informed consent, both through general testimony and through testimony about specific topics that were discussed. Under the Board's test, the burden thus shifted to Disciplinary Counsel to establish by clear and convincing evidence that Ms. Ackerman did not give informed consent. Disciplinary Counsel does not contend that the Board lacks authority to establish a burden of production that is satisfied by the introduction of any evidence, so we need not decide that issue. *Cf., e.g.*, *Parker v. United States*, 155 A.3d 835, 842 (D.C. 2017) ("When a defendant presents any evidence that she acted in self-defense, the government assumes the burden of proving, beyond a reasonable doubt, that she did not.") (brackets and internal quotation marks omitted). Nor does Disciplinary Counsel argue that it was unfairly surprised by the Board's ruling as to Disciplinary Counsel's burden of proof.

The dissent takes the view that this court should require the Board to adopt the burden-shifting framework utilized in employment-discrimination cases. *Post* at 18-19. We do not agree. First, although Disciplinary Counsel appears to assume that the Board in fact adopted that framework, we do not view the Board as

having done so.  Moreover, Disciplinary Counsel does not squarely present or brief an argument that this court should require the Board to adopt that framework. Second, the dissent relies on Comment [28] to Rule 1.7, which states that "under the District of Columbia substantive law, the lawyer bears the burden of proof that informed consent was secured." *Post* at 17.  That comment by its terms describes the requirements of substantive law, and it says nothing about the burden of proof that should apply in disciplinary proceedings.  Rather, in context, the language relied upon by the dissent appears to be directed at explaining why it is prudent to obtain informed consent in writing.  D.C. R. Prof. Cond. 1.7, Comment [28]. Finally, we note that although the dissent relies on Comment [28], the dissent would not actually impose the ultimate burden of proof on the lawyer, instead proposing that the court require the Board to apply the more complex burden-shifting framework used in employment-discrimination law.  *Post* at 18-19.  That approach finds no direct support in Comment [28].

Thus, we turn to the question whether Disciplinary Counsel demonstrated by clear and convincing evidence that Ms. Ackerman did not give informed consent to representation by the Szymkowiczes.  We conclude that the record supports the Board's conclusion that Disciplinary Counsel failed to carry that burden.  In significant part, Disciplinary Counsel's argument to the contrary rests on concerns

about Ms. Ackerman's competence.  In our earlier opinion in this matter, however, we concluded that the record adequately supported the factual conclusion of the Hearing Committee that Ms. Ackerman was competent.  *In re Szymkowicz*, 124 A.3d at 1084-85.  We have no basis to second-guess the factual conclusions of the Hearing Committee at this juncture.

Disciplinary Counsel also raises various concerns about topics that the Szymkowiczes ought to have raised more specifically or at specific times, in order to obtain fully informed consent.  We agree with Disciplinary Counsel to the following extent:  if the Szymkowiczes had borne the burden of proving the adequacy of Ms. Ackerman's consent, they would have failed to carry their burden. The difficulty for Disciplinary Counsel is that Disciplinary Counsel bore the burden of proving the inadequacy of the consent, by clear and convincing evidence.  The Board reasonably concluded that Disciplinary Counsel failed to meet that burden.  Most notably, Disciplinary Counsel does not appear to have attempted to elicit a complete and specific record of precisely what John T. Szymkowicz did and did not say to Ms. Ackerman on the topic of conflict of interest.

We do note an issue of timing. In determining that the Szymkowiczes had not been shown to have failed to obtain informed consent, the Board focuses on the actions of the Szymkowiczes through March 7, 2007. At that point, the Board concluded, the Szymkowiczes stopped representing Ms. Ackerman. Disciplinary Counsel takes issue with the Board's conclusion about the date on which the Szymkowiczes ended their representation of Ms. Ackerman. This issue, too, turns on the burden of proof. Disciplinary Counsel correctly points out that the formal written withdrawal was limited to a single case and did not explicitly terminate all representation of Ms. Ackerman by the Szymkowiczes. Disciplinary Counsel also raises legitimate questions as to whether Ms. Ackerman would have had reason to know that the Szymkowiczes were no longer representing her in any respect. But here too Disciplinary Counsel failed to elicit evidence about precisely what the Szymkowiczes or Ms. Ackerman's new attorneys told Ms. Ackerman on the issue of representation going forward. Under the circumstances, we are unable to disturb the Board's conclusion that Disciplinary Counsel failed to prove by and clear and convincing evidence that the Szymkowiczes continued to represent Ms. Ackerman after March 7, 2007.

In sum, although we fully understand Disciplinary Counsel's concerns about the Szymkowiczes' conduct in this case, we accept the Board's conclusion that the

Szymkowiczes were not shown by clear and convincing evidence to have violated Rule 1.7.

**B.**

We turn finally to the question of sanction for Mr. King. We previously accepted the Board's recommendation that an informal admonition was warranted for Mr. King's violation of Rule 1.5 (b) by failing to obtain a written retainer agreement. *In re Szymkowicz*, 124 A.3d at 1088. As we have noted, the Board in this case recommends that the court impose no additional sanction based on Mr. King's conceded violation of Rule 1.7. Although we ordinarily defer to the Board's recommended sanction, *In re Rodriguez-Quesada*, 122 A.3d 913, 922 (D.C. 2015) (per curiam), we will not do so if such deference is "unwarranted," D.C. Bar R. XI § 9 (h)(1). In the present case, we conclude that imposing no discipline at all on Mr. King for his violation of Rule 1.7 would be unwarranted. We do not agree with the Board's view that Mr. King could not reasonably have been expected to understand that he should have spoken directly to Ms. Ackerman on the issue of potentially conflicting interests, rather than relying on communications with Dr. Ackerman. Well before Mr. King started to represent Ms. Ackerman, Comment [2] to D.C. R. Prof. Cond. 1.14 (2005) specifically

advised that, "Even if [a client] does have a legal representative, the lawyer should as far as possible accord the represented person the status of client, particularly in maintaining communication." Moreover, it is a longstanding principle that an agent, such as a POA-holder, has a fiduciary duty to the principal. *See Restatement (Third) of Agency* §§ 1.04(7) (POA holder is agent), 8.01 ("An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship."), 8.02 ("An agent has a duty not to acquire a material benefit from a third party in connection with transactions conducted or other actions taken on behalf of the principal or otherwise through the agent's use of the agent's position.") (Am. Law Inst. 2006). Given the obvious potential for conflicts of interest between Ms. Ackerman and Dr. Ackerman, Mr. King could not reasonably rely solely on the POA and should have sought informed consent from Ms. Ackerman.

The Board gave several other reasons in support of its conclusion that no discipline should be imposed on Mr. King for his violation of Rule 1.7, including that Mr. King's conduct did not involve dishonesty; Mr. King's actions did not harm Ms. Ackerman, because Ms. Ackerman's interests aligned with the actions Mr. King took; and Mr. King did not have a substantial record of prior discipline. Taking those considerations into account, we conclude that Mr. King's violation of

Rule 1.7 warrants public censure by this court. *See, e.g.*, *In re White*, 11 A.3d 1226, 1249 (D.C. 2011) (App'x A (attached Report and Recommendation of Board)) ("[S]anctions for conflicts of interest have run the gamut from public censure through disbarment, with more severe sanctions associated with greater harm (or potential harm) to the client and lawyer dishonesty."); *cf. In re Mance*, 980 A.2d 1196, 1207-09 (D.C. 2009) (imposing public censure based on attorney's good-faith mistake in commingling funds without informed consent from client).

For the foregoing reasons, we accept the Board's findings that the Szymkowiczes were not proven by clear and convincing evidence to have violated Rule 1.7. For Mr. King's conceded violation of Rule 1.7, we impose the public censure expressed in this opinion.

*So ordered.*

STEADMAN, *Senior Judge*, dissenting: This case turns on the proper allocation of the burdens of production of evidence when an attorney is faced with a proven conflict of interest. I find myself unable to agree with the majority's conclusion that the attorney, simply by presenting "any evidence of informed consent," shifts the burden of production back to Disciplinary Counsel. On the

contrary, I agree with Disciplinary Counsel's argument to us that once Disciplinary Counsel establishes a conflict of interest violation, the attorney assumes the burden of production to introduce sufficient evidence to present a prima facie case that he or she obtained informed consent from the client. As the majority acknowledges, this was not done here.

There is nothing new about this proposition. Rule 1.7 of our Rules of Professional Conduct lays down the fundamental principle that a lawyer must not serve under a conflict of interest. It then provides for a carefully circumscribed exception to this rule if the lawyer obtains the requisite informed consent with its demanding requirements for "full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation." Rule 1.7 (c)(1). Comments 27-30 to the Rule expand at length upon the rule itself and, in the current version promulgated more than a decade ago in 2007, contain this illuminating provision:

> It is ordinarily prudent for the lawyer to provide at least a written summary of the considerations disclosed and to request and receive a written informed consent, although the rule does not require that disclosure be in writing or in any other particular form in all cases. . . . Moreover,

> under the District of Columbia substantive law, *the lawyer bears the burden of proof that informed consent was secured*.

D.C. R. Prof. Conduct R. 1.7 cmt. 28 (emphasis added).[1]

The respective shifting of burdens of production, regardless of the ultimate burden of persuasion, is familiar doctrine in the law of evidence.[2]  Although not determinative, a relevant consideration in assigning the burden of production is an assessment of the party best situated to present the relevant evidence.  While Disciplinary Counsel can call the attorney to testify and question him or her about whether informed consent was obtained, the attorney is uniquely positioned to have firsthand knowledge of whether and how consent was obtained.  And it is the attorney who is seeking to invoke the protection of the exception to the general rule.

---

[1]  The comment in the prior version of the Rules, promulgated on January 1, 1991, similarly provided: "Moreover, under District of Columbia substantive law, the lawyer bears the burden of proof to demonstrate the existence of consent."

[2]  *See, e.g.*, GEORGE E. DIX ET AL., 2 MCCORMICK ON EVIDENCE §§ 336 ff. (Kenneth S. Broun ed., 7th ed. 2013).

I disagree that the structure of criminal law presents a fair analogy. Bar discipline proceedings are designed to ensure that attorneys abide by the rules of professional conduct that their license demands and to protect the public accordingly. I suggest that the burden-shifting framework utilized in employment discrimination cases might be a more appropriate model. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), the United States Supreme Court established a burden shifting framework for such litigation, which we have described as follows:

> [A] plaintiff bears the initial burden of producing evidence to sustain a prima facie case. If the plaintiff meets this burden, the employer must then produce evidence of a legitimate, nondiscriminatory reason for his action. If the employer offers a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is pretextual.

*Chang v. Inst. for Public–Private P'ships, Inc.*, 846 A.2d 318, 329 (D.C. 2004) (quoting *Blount v. Nat'l Ctr. for Tobacco–Free Kids*, 775 A.2d 1110, 1115 (D.C. 2001)).

As the long-standing comment to our Rule 1.7 indicates, in my view the attorney should be required to present a prima facie case that informed consent was obtained before the burden shifts back to Disciplinary Counsel, who bears the

ultimate burden of persuasion.[3] In the situation here, I would be inclined to remand to the Board of Professional Responsibility to reopen the hearing on the issue of informed consent with a proper understanding of the respective burdens of production and persuasion.

---

[3] I do not understand Disciplinary Counsel to argue otherwise before us.